United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA M. KENNEDY,<br><br>          Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>          Defendant.<br>_____/ | No. C-09-3604 EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 17, 19, 21, 23, 24)** |

In September 2004, Plaintiff Tina M. Kennedy protectively filed an application for disability insurance benefits and supplemental security income. Ms. Kennedy has exhausted her administrative remedies with respect to her claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Ms. Kennedy has moved for summary judgment, and the Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **DENIES** Ms. Kennedy's motion and **GRANTS** the Commissioner's.

## I.  FACTUAL & PROCEDURAL BACKGROUND

In September 2004, Ms. Kennedy protectively filed an application for disability insurance benefits and supplemental security income. *See* AR 112 (leads/protective filing worksheet). Mr. Kennedy asserted disability as of October 27, 2003, due to back problems. *See* AR 113 (application for disability insurance benefits); AR 118 (disability report). Ms. Kennedy's application was initially denied on March 14, 2005, *see* AR 74-78 (notice of disapproved claims), and again on

reconsideration on August 4, 2005. *See* AR 85-89 (notice of reconsideration). Ms. Kennedy then sought an administrative hearing before an administrative law judge ("ALJ"). *See* AR 90 (request for hearing by ALJ). A hearing was held before ALJ Charles Reite on February 22, 2007. *See* AR 32 *et seq.* (ALJ hearing).

On March 15, 2007, the ALJ held that Ms. Kennedy was not disabled under the Social Security Act. *See* AR 22-31 (ALJ decision). The ALJ evaluated Ms. Kennedy's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, the ALJ found that Ms. Kennedy had not engaged in substantial gainful activity since October 27, 2003, the alleged onset date. *See* AR 24 (ALJ decision). At step two, the ALJ determined that Ms. Kennedy had two severe impairments: (1) somatoform disorder and (2) myofascial pain of unknown etiology. *See* AR 24. At step three, the ALJ concluded that Ms. Kennedy did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* AR 27. At step four, the ALJ found that Ms. Kennedy had the physical residual functional capacity to engage in light work. As for Ms. Kennedy's mental residual functional capacity, the ALJ concluded that there were no limitations or that there were only mild limitations. *See* AR 27. Finally, at step five, the ALJ held that, based on Ms. Kennedy's residual functional capacity, she was capable of performing

her past relevant work as a site supervisor. *See* AR 31. Accordingly, the ALJ deemed Ms. Kennedy not disabled. *See* AR 31.

Thereafter, Ms. Kennedy sought review of the ALJ decision but her request for review was denied by the Appeals Council on June 5, 2009. *See* AR 5-7 (notice of Appeals Council action). This petition ensued.

## II.  DISCUSSION

As the Ninth Circuit has explained, a court

> may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A court review[s] the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. . . . [W]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In the instant case, Ms. Kennedy argues that the ALJ's decision was erroneous for the following reasons: (1) the ALJ improperly rejected the opinions of her treating physicians; (2) the ALJ erred in finding her only partially credible; (3) the ALJ failed to take into account her diagnosed medical problems; (4) the ALJ failed to conduct an appropriate analysis of her mental impairments pursuant to 20 C.F.R. §§ 404.1520a and 416.920a; and (5) the ALJ's residual functional capacity determination was erroneous because the ALJ failed to include in the hypothetical posed to the vocational expert her use of a cane. Each of these contentions is addressed below.

A.   Timeliness

As a preliminary matter, however, the Court addresses Ms. Kennedy's assertion that her motion for summary judgment should be granted because the Commissioner failed to oppose her motion in a timely manner. *See* Docket Nos. 19, 24 (motions). This argument is without merit. Ms. Kennedy filed her motion for summary judgment on June 14, 2010. The Commissioner's response was due thirty days later. *See* Docket No. 3 (social security procedural order). Contrary to what Ms.

Kennedy argues, thirty days from June 14 is July 14, and not July 13. *See* Fed. R. Civ. P. 6(a)(1)(A) (providing that, in computing time, "exclude the day of the event that triggers the period"). The Commissioner filed its opposition to Ms. Kennedy's motion (also a cross-motion for summary judgment) on July 14, and therefore there is no time bar.[1] The Court notes that, even if the opposition had been due on July 13, it would not decline to consider a brief filed only one day late, particularly where there is no demonstrated prejudice to the opposing party as a result.

B.    Treating Physicians

As noted above, Ms. Kennedy's first contention on the merits is that the ALJ improperly rejected the opinions of her treating physicians, in particular, Dr. C. Lim, Dr. S. Lim, Dr. Schiff, and Dr. Wren.

In evaluating this argument, the Court notes first that, under the regulations, there is a distinction between acceptable medical sources and other health care providers who are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a), 416.923(a) (defining acceptable medical sources). Only acceptable medical sources may establish the existence of a medically determinable impairment, may give medical opinions, or may be considered treating sources whose medical opinions may be entitled to controlling weight. *See* SSR 06-03p. There does not appear to be any dispute that Dr. C. Lim, Dr. S. Lim, Dr. Schiff, and Dr. Wren are in fact acceptable medical sources.

With respect to acceptable medical sources, "[c]ases in [the Ninth] [C]ircuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general matter, the opinions of treating physicians are favored over those of nontreating physicians. For example, "[i]f a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence in [the] case record, [it will be given] controlling weight.'" *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)).

---

[1] On July 15, the Commissioner re-filed its opposition but only because he had not included in the prior filing a table of contents and table of authorities. *See* Docket No. 22 (notice of errata).

However, where a treating doctor's opinion is contradicted, an ALJ may reject the treating doctor's opinion by providing specific and legitimate reasons that are supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also* SSR 96-2p. An examining physician's opinion can constitute substantial evidence preventing a treating physician's opinion from being accorded controlling weight. *See Orn*, 495 F.3d at 631. Likewise, an opinion from a health care provider who is not an acceptable medical source may outweigh the opinion of an acceptable medical source, including a treating source. *See* SSR 06-03p.

1. <u>Dr. C. Lim, Dr. S. Lim, and Dr. Schiff</u>

Contrary to what Ms. Kennedy suggests, the ALJ properly credited the opinions of Dr. C. Lim, Dr. S. Lim, or Dr. Schiff. In his decision, the ALJ referenced the opinions of these doctors with respect to Ms. Kennedy's physical impairments. *See* AR 25 (ALJ decision). The ALJ did not reject their opinions that Ms. Kennedy suffered from a back or lumbar strain. *See, e.g.*, AR 260 (medical record, dated 10/30/2003, from Dr. C. Lim, assessing muscle strain); AR 501 (workers' compensation physician's progress report, dated 10/30/2003, from Dr. S. Lim, diagnosing upper and lower back strain); AR 258 (medical record, dated 1/13/2004, from Dr. C. Lim, assessing neck, upper back, and lower back strain with left leg pain); AR 476 (medical record, dated 1/17/2004, from Dr. Schiff, diagnosing lumbar spine strain/sprain). In fact, the ALJ found that Ms. Kennedy suffered from myofascial pain, consistent with the assessments or diagnoses of these doctors. *See* AR 24 (ALJ decision). The problem for Ms. Kennedy is that she has not pointed to any physical limitations identified by these doctors that the ALJ failed to credit. *See Burch v. Barnhart*, 400 F.3d 676, 674 (9th Cir. 2005) (noting that the plaintiff "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider").

Ms. Kennedy points out that Dr. C. Lim and Dr. S. Lim also found that she suffered from not only a physical impairment but also a mental impairment – *i.e.*, depression or anxiety. *See* AR 259 (medical record, dated 11/26/2003, from Dr. C. Lim, assessing depression and anxiety disorder); AR 496 (physician's supplementary certificate, dated 6/10/2004, from Dr. S. Lim, diagnosing depression). It is true that the ALJ did not make specific mention of this impairment in his decision.

5

The problem again for Ms. Kennedy is that she has not identified any limitations arising from these impairments discussed by Drs. C. Lim and S. Lim that the ALJ did not consider.

### 2. Dr. Wren

As a preliminary matter, the Court notes that it is not clear that Dr. Wren was a treating physician in the conventional sense. The record suggests, for example, that Dr. Wren initially saw Ms. Kennedy not to treat her but rather to provide a medical evaluation in conjunction with a claim made by her to the disability insurer for the school district for which she worked. *See* AR 232-44 (medical evaluation, dated 2/11/2005, by Dr. Wren) (itemizing professional charges); *see also* AR 228-30, 225-27 (medical evaluations) (same). However, because the ALJ appears to have treated Dr. Wren as a treating physician, and neither party has made an argument to the contrary, the Court proceeds with that assumption.

In his decision, the ALJ did not reject Dr. Wren's opinions in their entirety. Indeed, the only opinions that the ALJ rejected were those contained in the medical source statement, dated November 6, 2006 – more specifically, the opinions related to Ms. Kennedy's limitations. *See* AR 456-61 (medical source statement). In the statement, Dr. Wren diagnosed Ms. Kenney with somatoform pain disorder and chronic depressive disorder and stated that her prognosis was guarded. *See* AR 456. Dr. Wren also stated that Ms. Kennedy's experience of pain or other symptoms was frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks; that she could only sit for 4 hours out of an 8-hour work day; that she could only stand or walk for 4 hours out of an 8-hour work day; that she would need to take unscheduled breaks during an 8-hour work day; that she should rarely lift or carry 20 pounds; and that she could occasionally lift 10 pounds. *See* AR 458-59. The ALJ explained that the above opinions were not being credited because they were "not supported by the treating evidence and [were] inconsistent with the record as a whole." *See* AR 29 (ALJ decision).

As noted above, a treating physician's opinion is entitled to controlling weight only where it is "'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence in [the] case record.'" *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)). The contradicting opinion of an examining physician can constitute

substantial evidence, as can the opinion of a health care provider who is not an acceptable medical source. *See id.*; SSR 06-03p.

With respect to Ms. Kennedy's mental limitations, the ALJ essentially favored the opinions of Dr. McGain over those of Dr. Wren (as expressed in the medical source statement). According to Dr. McGain, Ms. Kennedy was a "bright woman" with a "quick grasp and understanding of involved intellectual material. Her memory is very good. She is a valid and accurate historian, and can recall minute details of her life that occurred many years previously." AR 192 (medical record, dated 12/12/2004, from Dr. McGain). Although Dr. McGain treated Ms. Kennedy for several years, she did not indicate that Ms. Kennedy had any mental limitations that would preclude her from working (either in whole on in part), restricting her discussion of limitations to physical ones only.[2] *See id.* Although Dr. McGain discussed stresses Mr. Kennedy experienced at work at times, she never found that Ms. Kennedy suffered from a mental impairment that disabled her from employment. *See* AR 193-95.

Even assuming that Dr. McGain was not an acceptable medical source,[3] the opinion of a health care provider who is not an acceptable medical source may – as noted above – be given more weight than the opinion of an acceptable medical source, including a treating source. *See* SSR 06-03p. Indeed, SSR 06-03p emphasizes that "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* Here, it was reasonable for the ALJ to give greater weight to Dr. McGain's opinions on mental limitations given (1) the length and frequency of the treatment relationship between Ms. Kennedy and Dr. McGain and (2) Dr. McGain's specialization with

---

[2] In her papers, Ms. Kennedy suggests that the ALJ should have taken into account Dr. McGain's statements regarding Ms. Kennedy's physical impairments. However, Dr. McGain was not treating Ms. Kennedy's physical impairments. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (noting that the Secretary "need not discuss all evidence presented to her"; instead, "she must explain why '*significant* probative evidence has been rejected'") (emphasis added).

[3] It is not clear from the record whether Dr. McGain is an acceptable medical source pursuant to 20 C.F.R. §§ 404.1513(a) and 416.923(a). *See* AR 192 (medical record, dated 12/20/2004, from Dr. McGain) (noting that she is a psychotherapist and not a medical doctor).

7

respect to mental impairments. *See* SSR 06-03p (stating that factors to consider in evaluating opinions of a health care provider who is not an acceptable medical source include, *e.g.*, "[h]ow long the source has known and how frequently the source has seen the individual" and "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s)"); AR 193 (medical record, dated 3/22/2004, from Dr. McGain, noting that she began working with Ms. Kennedy in 10/2001 and "continue[s] to see her about once a month"); AR 192 (medical record, dated 12/20/2004, from Dr. McGain) (noting that she is a psychotherapist); AR 232 (medical record, dated 5/26/2005, from Dr. Wren) (indicating that Dr. Wren's specialty is orthopedic surgery).

As for Ms. Kennedy's physical limitations, here, the ALJ credited the opinions of acceptable medical sources who were examining physicians (Dr. Shafer and Dr. Cha) over those of Dr. Wren (as expressed in the medical source statement). The Court concludes that the ALJ's decision to do so was not erroneous, particularly because the underlying medical records from Dr. Wren, as opposed to the medical source statement, actually reflected agreement with Dr. Shafer. Dr. Shafer, in his orthopedic evaluation,[4] stated that Ms. Kennedy reasonably demonstrated the following diagnoses:

> 1. Left shoulder strain by history (left dominant), specific to 10/27/03 (to a lesser extent left chest wall and neck).
> 2. Chronic lumbosacral strain by history with neuralgia component to the left leg (normal straight leg raising and MRI, but glove hypesthesia below the left knee).
> 3. Cervical strain by history (minimal).
> 4. Myofascial pain syndrome upper back, shoulders and trapezia secondary to #1.

AR 162 (medical record, dated 7/6/2004, from Dr. Shafer). With respect to limitations, Dr. Shafer stated:

> I believe the patient is best described as a disability precluding heavy lifting (20% standard). It noted there is a paucity of objective physical findings in this patient other than her loss of motion and is giving the patient a good deal of the benefit of the doubt. Her current *objective* factors of disability orthopedically are the minimal degenerative changes on the MRI (unrelated marrow changes), her loss of motion of neck and back and her minimal scoliotic change (not clinically

---

[4] Dr. Shafer examined Ms. Kennedy not in conjunction with her social security claim but in conjunction with her workers' compensation claim. *See* AR 25 (ALJ decision).

8

> significant) on plain films. Her *subjective* factors of disability are symptoms which are slight frequent, occasionally moderate.
>
> As it relates to the left shoulder, I believe she has a persisting strain syndrome here which is mild. It restricts her in very heavy lifting beyond 20 pounds on the effected side, but it is subsumed entirely by the patient's low back condition. She additionally, however, has a restriction in frequent overhead on the left arm which would be additive. The only *objective* factors of disability to the left shoulder are the loss of motion. Her *subjective* factors of disability are symptoms which are slight intermittent, occasionally slight to moderate.

AR 164 (emphasis in original).

In one of his reports, Dr. Wren stated that he had reviewed the evaluation by Dr. Shafer and noted:

> *I agree* [with his conclusion] that Ms. Kennedy has suffered a left shoulder strain, chronic lumbosacral strain and also a cervical thoracic strain, myofascial pain syndrome upper back shoulder, shoulders and trapezial. The diagnostic studies show no evidence of abnormal disc or nerve root entrapment or rotator cuff injury or any other bony abnormalities.
>
> Dr. Shafer did indicate Ms. Kennedy's condition is permanent and stationary *with work restrictions as discussed in that report*.

AR 226 (medical record, dated 5/26/2005, from Dr. Wren) (emphasis added). While Dr. Wren did not expressly state that he agreed with the work restrictions assessed by Dr. Shafer, such can reasonably be inferred.

In any event, the limitations found by Dr. Wren in the medical source statement were -- as the ALJ pointed out -- contradicted by not only Dr. Shafer but also Dr. Cha who conducted an orthopedic evaluation and found only limited restrictions on Ms. Kennedy's physical abilities. *See* AR 196-200.

The ALJ's decision to reject the medical source statement of Dr. Wren is also supported by the fact that Dr. Wren's opinions in the medical source statement were not consistent with his own underlying medical records. *See* AR 26 (ALJ decision) (noting that "there do not appear to be any other treating notes or reports from Dr. Wren in the file under the [medical source statement], which is inconsistent with the rest of the evidence." *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (holding that the ALJ properly rejected treating physician's opinion where physician's

9

"extensive conclusions regarding [claimant's] limitations are not supported by his own treatment notes"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ properly discredited doctor's opinion where doctor's responses to questionnaire were inconsistent with doctor's own medical records). For example, Dr. Wren noted in one record that he had referred Ms. Kennedy for diagnostic studies, *see* AR 228 (medical record, dated 4/21/2005, from Dr. Wren) (noting request for authorization for EMG with nerve conduction study of lower back and left leg and authorization for MRI scan of cervical spine and thoracic spine), but those studies largely had normal results. *See* AR 225 (medical record, dated 5/26/2005, from Dr. Wren) (noting that EMG with nerve conduction studies suggested sciatic nerve or S-1 nerve root irritation but no obvious S1 radiculopathy and that MRIs, as well as x-ray, revealed no significant abnormalities).

Finally, to the extent Dr. Wren's assessment of Ms. Kennedy's functional limitations were based on her subjective reports and not objective clinical findings and tests (particularly given Dr. Wren's diagnosis of somatoform pain disorder and myofascial pain), the ALJ properly refused to fully credit Ms. Kennedy's testimony about her symptoms and limitations. *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 602 (9th Cir. 1999) (noting that "[a] physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted'"). This issue is discussed below.

In sum, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Wren's opinion (as expressed in the medical source statement) on Ms. Kennedy's functional limitations. *See Bayliss,* 427 F.3d at 1216.

C.  Credibility

Ms. Kennedy challenges next the ALJ's findings regarding her credibility. In his decision, the ALJ found that Ms. Kennedy's testimony about her symptoms arising from her impairments was only partially credible. *See* AR 28 (ALJ decision).

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other

10

symptoms alleged." The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

In the instant case, the ALJ concluded that Ms. Kennedy's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 28 (ALJ decision). In other words, Ms. Kennedy had satisfied the first step of the above credibility analysis. But the ALJ went on to conclude that Ms. Kennedy had not completely satisfied the second step, holding that her statements about the severity of her symptoms were "not entirely credible" – later adding that her credibility was "poor." AR 28. In arriving at the conclusion that Ms. Kennedy was only partially credible, the ALJ took note of, *inter alia*, (1) the objective medical evidence which did not support the intensity, persistence, and limiting effects of Ms. Kennedy's symptoms; (2) the opinion of an examining physician, Dr. Stanford,[5] that Ms. Kennedy "is apt to use physical symptoms in manipulative ways" – *i.e.*, "apt to seek secondary gains for what she regards as her physical problems," AR 514 (medical evaluation, dated 12/22/2004, from Dr. Stanford); and (3) the circumstances under which her work for her last employer (a school) was terminated. More specifically,

> [Ms. Kennedy] was doing fine physically and mentally until she got into a dispute with her supervisor, Ms. Carrie Purdue, the school principal. Ms. Purdue questioned claimant about a missing flat screen television from the school and also had some unexplained, unpleasant involvement with claimant's family . . . , all of which claimant believes led to her not getting a permanent position at Gompers school. At about the same time in October 2003, claimant was offered other school positions through the union, but turned them down and developed the sudden onset of mysterious upper extremity pain. All in

---

[5] Like Dr. Shafer, Dr. Stanford examined Ms. Kennedy not in conjunction with her social security claim but in conjunction with her workers' compensation claim.

> all, it appears that Dr. Stanford's assessment . . . is the best explanation for claimant's decision to stop working and seek workers' compensation and other disability benefits, i.e., secondary gain.

AR 28-29.

Ms. Kennedy's main attack on the ALJ's credibility assessment consists of the argument that, in discussing secondary gain, "Dr. Stanford was actually describing the symptoms of her very real Psychiatric Disorder when he made the [use] of the term . . . and [the use of the term was] not meant as a credibility determination." Mot. at 18. She emphasizes that part of her somatization disorder is to "'over-report' her physical symptoms." *Id.* at 20.

The Court is not persuaded. Even if Ms. Kennedy's mental impairment led her to exaggerate her physical symptoms, the fact remains that Dr. Stanford stated that Ms. Kennedy was likely exaggerating her physical impairments in order to obtain secondary gain. The Ninth Circuit has indicated that evidence that a claimant is being motivated by secondary gain can be evidence of malingering. *See Merillat v. Comm'r of SSA*, 350 Fed. Appx. 163, 166 (9th Cir. 2009). Furthermore, the Ninth Circuit has held that, only "[i]f there is no affirmative evidence that the claimant is malingering, [must] the ALJ [then] provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ's reading of Dr. Stanford's statement that Ms. Kennedy was "apt to seek secondary gains for what she regards as her physical problems" as an expression of an opinion relevant to credibility is a fair one with which this Court agrees. AR 514 (medical evaluation, dated 12/22/2004, from Dr. Stanford).

D.  <u>Diagnosis of Medical Problems</u>

Although not entirely clear, Ms. Kennedy's third argument appears to be that the ALJ failed to take into account her diagnosed medical problems -- including somatoform disorder and myofascial pain disorder. This argument lacks merit. The ALJ clearly found in his decision that Ms. Kennedy suffered from these impairment and even determined that these impairment were severe at step two of the five-step sequential evaluation process. *See* AR 24 (ALJ decision). To the extent Ms. Kennedy argues that the ALJ did not properly assess her limitations as a result of these impairments, either discrediting her treating physicians' opinions or rejecting her own credibility,

those arguments have been addressed above. To the extent Ms. Kennedy argues that the ALJ did not consider other medical impairments such as depression and anxiety, Ms. Kennedy has not identified any limitations arising from those impairments that the ALJ did not consider. *See Burch*, 400 F.3d at 674 (noting that the plaintiff "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider").

E.  20 C.F.R. §§ 404.1520a and 416.920a

Ms. Kennedy asserts next that the ALJ erred in failing to conduct an appropriate analysis of her mental impairments pursuant to 20 C.F.R. §§ 404.1520a and 416.920a. These regulations are applicable when a claimant allegedly has a severe mental impairment, as opposed to physical. The regulations provide for a special technique: "Under the special technique, [the ALJ] must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [she has] a medically determinable mental impairment(s)." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If so, then the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)." *Id.* §§ 404.1520a(b)(2), 416.920a(b)(2). There are "four broad functional areas" used to rate the degree of a claimant's functional limitation: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).

> When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more.

*Id.* §§ 404.1520a(c)(4), 416.920a(c)(4).

After rating the degree of functional limitation, an ALJ then determines the severity of the mental impairment.

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521 [or § 416.921]).

1  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1) (emphasis added).  Under §§ 404.1521 and 416.921, "[a]n

2  impairment or combination of impairments is not severe if it does not significantly limit your

3  physical or mental ability to do basic work activities." *Id.* §§ 404.1521(a), 416.921(a).

4     In the instant case, the ALJ did find, at step two, that Ms. Kennedy had a severe mental

5  impairment -- *i.e.*, somatoform disorder -- but then, at step four, ultimately concluded that there were

6  no significant limitations as a result of the impairment.

> From a psychiatric standpoint, claimant has no limitations with regard to activities of daily living; no limitations with regard to maintaining social functioning; is mildly limited with regard to maintaining concentration, persistence and pace; and has had no episodes of decompensation in work or work-like settings.

10  AR 27 (ALJ decision).

11     Because the ALJ ultimately did apply the special technique required by §§ 404.1520a and

12  416.920a, Ms. Kennedy's argument fails.  To the extent Ms. Kennedy suggests that the ALJ should

13  have performed the same analysis for other mental impairments -- *e.g.*, depression, anxiety, or a

14  schizophrenic disorder -- again, Ms. Kennedy has not identified any limitations arising from those

15  impairments that the ALJ did not consider.  *See Burch*, 400 F.3d at 674 (noting that the plaintiff "has

16  not set forth, and there is no evidence in the record, of any functional limitations as a result of her

17  obesity that the ALJ failed to consider").  The Court also notes that Dr. Stanford, one of the

18  examining physicians whose report Ms. Kennedy cites because he diagnosed a schizophrenic

19  disorder, actually stated that "Ms. Kennedy does not appear to have at any point been temporarily

20  psychiatrically disabled."  AR 515 (medical evaluation, dated 12/22/2004, by Dr. Stanford); *see also*

21  AR 30 (ALJ decision) (taking note of Dr. Stanford's conclusion).

F. <u>Vocational Expert</u>

23     Finally, Ms. Kennedy challenges the ALJ's decision on the basis that the hypothetical he

24  posed to the vocational expert did not include her use of a cane.  Ms. Kennedy further argues that

25  any hypothetical for the vocational expert should have included her suffering from "fatigue, pain,

26  anxiety, panic, somatization disorder, depression or headaches."  Mot. at 25.  The Court is not

27  persuaded.

14

As the Commissioner points out, the ALJ is "free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). In the instant case, the ALJ did not completely discount Ms. Kennedy's fatigue and pain. Indeed, he found that she was capable of doing only light work. As for the mental impairments cited by Ms. Kennedy, as noted above, Ms. Kennedy has not identified any limitations arising from those impairments that the ALJ did not consider. This leaves only the issue of the cane. Under the circumstances, the ALJ did not err in not including the use of the cane as part of the hypothetical. Most notably, Ms. Kennedy testified at the hearing that she stopped using the cane because her left "felt a lot better. . . . I don't fall over anymore. I don't lose my balance." AR 50 (ALJ hearing). Given this testimony by Ms. Kennedy, the ALJ did not err in including the use of a cane as part of the hypothetical posed to the vocational expert. *Cf. Vincent*, 739 F.2d at 1394-95 (9th Cir. 1984) (noting that the Secretary "need not discuss all evidence presented to her"; instead, "she must explain why '*significant* probative evidence has been rejected'") (emphasis added).

### III. CONCLUSION

For the foregoing reasons, Ms. Kennedy's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted.

This order disposes of Docket Nos. 17, 19, 21, 23, and 24.

IT IS SO ORDERED.

Dated: October 5, 2010

EDWARD M. CHEN
United States Magistrate Judge